UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| NORTHWEST AIRLINES, INC., | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MICHAEL BAUER, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Northwest Airlines, Inc. ("Northwest"), for its Complaint against Defendant Michael Bauer ("Bauer"), states as follows:

**NATURE OF ACTION**

1. This is an action for unlawful trade practices, deceit, conversion, interference with business, arising under the laws of North Dakota and trademark infringement, dilution, deceptive trade practices, unfair competition, cyber squatting, and other relief arising under the trademark laws of the United States of America, specifically 15 U.S.C. § 1051 *et seq.* (the "Lanham Act").

2. Bauer has engaged, and continues to engage, in a fraudulent scheme in which he unlawfully acquires and/or creates Northwest Travel Discount e-Certificates and/or e-Certificate coupon numbers (herein collectively "e-Certificates"), and sells these stolen and/or bogus e-Certificates to others for consideration at a website with the domain name www.northwestdiscountcoupons.com.

3. Bauer's scheme, and others like it, have caused, and continue to cause, Northwest to lose millions of dollars in revenue. Moreover, Bauer's use of the domain name

www.northwestdiscountcoupons.com to further his illegal business causes incalculable and irreparable injury to the reputation and goodwill embodied in Northwest's trademarks.

## THE PARTIES

4.     Northwest is a corporation organized and existing under the laws of the State of Minnesota and has its principal place of business at 2700 Lone Oak Parkway, Eagan, Minnesota. Northwest is engaged in business as a commercial airline.

5.     Upon information and belief, Bauer is an adult residing in Beulah, North Dakota.

## JURISDICTION AND VENUE

6.     This action arises due to unlawful trade practices, deceit, conversion, and interference with business by Bauer at an address in Beulah, North Dakota.  There is complete diversity of citizenship between Northwest and Bauer, and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

7.     Jurisdiction is also proper under 28 U.S.C. § 1331 because this matter arises under the laws of the United States; in particular 15 U.S.C. § 1051 *et seq*.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).

## NORTHWEST E-CERTIFICATES

9.     Northwest issues e-Certificates to passengers who experience flight delays.  E-Certificates are redeemable for significant discounts on future ticket purchases.

10.     Passengers redeem e-Certificates by visiting Northwest's website and entering the unique coupon number that appears on the face of each e-Certificate.  Redemption occurs at the time a flight reservation is made.

11. E-Certificates issued prior to November 2006 are transferable but not for cash or any other consideration. E-Certificates issued since November 2006 may not be transferred even for free.

12. E-Certificates are intended to be used by Northwest passengers who are inconvenienced by flight delays. Northwest distributes e-Certificates to foster customer goodwill, not to create a secondary market in e-Certificates.

13. E-Certificates exist in three forms: (1) physical documents; (2) electronic versions of physical documents; and/or (3) e-Certificate coupon numbers that can be used to redeem e-Certificates. E-Certificates in all forms are the personal property of Northwest.

## THE E-CERTIFICATES SCHEME

14. Bauer operates a website with the domain name northwestdiscountcoupons.com. A printout of the website is at Exhibit A. Bauer uses this website to advertise and sell Northwest's e-Certificates for consideration. Bauer's website says, in relevant part:

> "Northwest Airlines offers discount travel coupons that can be used when booking your flight online or over the phone with Northwest. Coupons are electronic so you will not need the coupon at any point in time. Because these coupons are electronic we can QUICKLY get the coupon codes to you via email so you can book your flight."

15. Among other false statements, Bauer's website promises that "[t]his coupon is completely transferable as it has no name or worldperks number on it, as opposed to a voucher or gift certificate. This is just a coupon!!"

16. Bauer's sale of the e-Certificates is a fraud on Northwest and on the passengers who purchase them believing they are legitimate.

17. In order to determine whether Bauer is legitimately acquiring e-Certificates, Northwest's employees have contacted Bauer. Posing as customers, Northwest's personnel have

400801.1                                          3

discussed purchasing a large number of e-Certificates from Bauer. Bauer's responses to Northwest's personnel indicates that he has an unlimited supply of Northwest's e-Certificates.

18. Northwest has purchased e-Certificates from Bauer's website and successfully used those e-Certificates to purchase discounted fares from Northwest.

19. Northwest's distribution of e-Certificates to delayed customers is such that it is implausible that Bauer is legitimately acquiring the e-Certificates.

20. Upon information and belief Bauer is either wrongfully creating, buying, and/or otherwise unlawfully obtaining Northwest's e-Certificates.

21. Passengers who unlawfully purchase e-Certificates from Bauer have redeemed the e-Certificates and accepted discounts from Northwest on ticket purchases.

22. The unlawful acquisition, creation, transfer, and use of fraudulent e-Certificates by Bauer is the source of significant revenue loss to Northwest.

## **LANHAM ACT VIOLATIONS**

I.   The History and Strength of the Northwest Trademarks

23. Northwest Airlines was established as Northwest Airways in 1926 to carry mail between Minneapolis/St. Paul, Minnesota and Chicago. It began passenger service in 1927. Today Northwest is the world's fifth largest airline with over 31,000 employees. Since 1926, Northwest has continuously and extensively engaged in the business of promoting, offering and distributing air transportation services in commerce under a family of marks that incorporate the word Northwest (hereafter referred to individually and collectively as the "NORTHWEST Marks").

24. During the many years Northwest has been continuously using the NORTHWEST Marks in commerce with its services, it has sold many billions of dollars of services under the NORTHWEST Marks, and has expended many millions of dollars in advertising its services

offered under the NORTHWEST Marks in a variety of media, including but not limited to television, a wide variety of both general circulation and specialized print media, billboards, trade shows and the Internet. In that time, there also have been many thousands of articles in general circulation newspapers and magazines, and discussions on radio, television and the Internet related to the services offered by Northwest.

25.  Through continuous, extensive and exclusive use and promotion by Northwest, the NORTHWEST Marks have garnered substantial name and design recognition and goodwill among consumers generally, and specifically consumers of air transportation services. The public distinguishes Northwest's services from those of others on the basis of the NORTHWEST Marks. Moreover, as a result of this extensive effort and considerable monies, and due to the high quality of the services, Northwest enjoys a prominent market position in the United States and around the world.

**II.    Northwest's Registered Trademarks and Domain Name**

26.  Northwest is the owner of numerous federal trademarks registered on the Principal Register for various services in the airline and travel industry, including the following:

| TRADEMARK | REG. NO. | REG. DATE | GOODS / SERVICES |
|---|---|---|---|
| **NORTHWEST AIRLINES WORLDGATEWAY** | 2744100 | 07/29/2003 | Airport terminal services, namely, making transportation reservations, baggage and cargo handling services. |
| **NORTHWEST AIRLINES WORLDPERKS MALL** | 2646848 | 11/05/2002 | Incentive award programs, namely, promoting the goods and services of others by awarding frequent flyer miles. |
| **NORTHWEST AIRLINES WORLDVACATIONS** | 2425286 | 01/30/20001 | Travel Agency Services, Namely, Making Reservations and Bookings Transportation; Arranging of Travel Tours. |

| TRADEMARK | REG. NO. | REG. DATE | GOODS / SERVICES |
|---|---|---|---|
| **NW NORTHWEST AIRLINES VOICELINK** | 2462142 | 06/19/2001 | Air transportation and reservation services. |
| **NORTHWEST AIRLINES VOICELINK** | 2480325 | 08/21/2001 | Air transportation and reservation services. |
| **NORTHWEST AIRLINES EVERY DAY DEALS** | 2250398 | 06/01/1999 | Air transportation and reservation services. |
| **NORTHWEST AIRLINES** | 1718838 | 09/22/1992 | Air transportation and reservation services. |

27. Attached hereto as Exhibits B through H, and incorporated herein by reference are true and correct copies of the federal trademark registrations issued for these trademarks, which are all in full force and effect.

28. Northwest is the exclusive owner of each of the marks referred to above through continuous, substantial and exclusive use of these marks in commerce in the United States for many years.

29. Northwest is the owner of the registered Domain Name www.NORTHWESTAIRLINES.com. Northwest directs traffic from the site with that Domain Name to its www.NWA.com website where it promotes and offers for sale its goods and services under the NORTHWEST Marks.

**III.     The NORTHWEST Marks Are Famous**

30.     Since long prior to the date of Bauer's first use of www.northwestdiscountcoupons.com, the NORTHWEST Marks have come to be and are now distinctive and famous, as defined in 15 U.S.C. Section 1125(c).  The NORTHWEST Marks are well known and of great value to Northwest, and are recognized and relied upon by the trade and the public as identifying Northwest as the source of services, and/or distinguishing Northwest's services from the services of others.  Northwest's use of the NORTHWEST Marks has been exclusive and continuous since long prior to the date of Bauer's first use of www.northwestdiscountcoupons.com.

31.     By virtue of the long, continuous and substantially exclusive use by Northwest, the extensive and costly national marketing efforts and resultant visibility of its air transportation services in association with the NORTHWEST Marks, and by virtue of Northwest's market position, the NORTHWEST Marks have acquired a secondary meaning in the minds of the consuming public nationwide and worldwide as identifying Northwest's services and being associated with them exclusively.

32.     The NORTHWEST Marks have become a strong and distinctive recognition factor that serves to identify and distinguish Northwest's services from those of all others.  Because of the consistent quality of Northwest's services marketed under and in association with the NORTHWEST Marks, Northwest has established considerable good will and reputation with respect to its goods and services.

**IV.     Bauer's Wrongful Acts**

33.     Bauer is using www.northwestdiscountcoupons.com to further his fraudulent scheme of selling e-Certificates.  Bauer is the registered owner of www.northwestdiscountcoupons.com, and operates a website on the World Wide Web at that

400801.1                                           7

Internet address where Northwest's e-Certificates are advertised, marketed, and offered for sale. Bauer's commercial website allows consumers to unlawfully purchase e-Certificates.

34. Bauer's Domain Name is highly similar in appearance, sound and commercial impression to the NORTHWEST Marks.

35. Bauer's Domain Name is confusingly similar to the NORTHWEST Marks.

36. Bauer's activities in registering, maintaining and using www.northwestdiscountcoupons.com is likely to cause confusion, mistake or deception of consumers and are likely to lead the public to the erroneous conclusion that the website at that address and the goods and services offered and administered therein originated with, and/or are sponsored by, and/or authorized by Northwest to the damage and harm of Northwest and the public.

37. Bauer has knowingly advertised, offered for sale, and sold and distributed the fraudulent e-Certificates under Northwest's Mark, in the State of North Dakota, in this judicial district, and in interstate commerce.

38. Northwest has not consented to Bauer's use of www.northwestdiscountcoupons.com nor has it sponsored, endorsed or approved Bauer's sale of e-Certificates at that website.

39. Bauer deliberately and willfully selected and is using a Domain Name similar to the NORTHWEST Marks, to mislead and confuse consumers into believing that Bauer's goods and services are provided, sponsored, or approved by Northwest.

40. Bauer deliberately and willfully selected and is using marks identical or similar to the NORTHWEST Marks to trade on Northwest's reputation and goodwill and to cause initial interest confusion among consumers seeking Northwest approved services.

41. Bauer deliberately and willfully selected and is using marks identical or similar to the NORTHWEST Marks to dilute and tarnish the NORTHWEST Marks.

42. Bauer use of www.northwestdiscountcoupons.com is likely to cause confusion, to cause mistake, and to deceive an appreciable number of reasonably prudent consumers into falsely believing that Bauer's scheme is sponsored or approved by Northwest, or that there is a connection between Northwest and Bauer, when there is not.

43. Bauer's unauthorized use of the NORTHWEST Marks is likely to dilute the distinctive quality of these marks and to tarnish and otherwise injure the reputation of Northwest.

44. As a direct and proximate result of Bauer's conduct set forth above, Northwest has suffered economic harm.

45. Bauer's conduct is continuing and will continue, constituting an ongoing threat to Northwest and the public. Unless Bauer is restrained and enjoined from engaging in the infringing conduct described herein, Northwest will suffer irreparable injury. It would be difficult to ascertain the amount of compensation that could afford adequate relief for the acts of Bauer, present and threatened, and Northwest's remedy at law is not adequate in and of itself to compensate it for said harm and damage.

## COUNT ONE

**VIOLATION OF UNLAWFUL SALES OR ADVERTISING PRACTICES ACT**
**(N.D.C.C. § 51-15-02)**

46. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

47. The Unlawful Sales or Advertising Practices Act, North Dakota Century Code Section 51-15-02, prohibits "[t]he act, use, or employment by any person of any deceptive act or practice, false pretense, false promise, or misrepresentation, with the intent that others rely

thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby…."

48. E-Certificates constitute "merchandise" under the Unlawful Sales or Advertising Practices Act.

49. Bauer has used deceptive acts or practices, false pretenses, false promises, and misrepresentations with the intent that others rely thereon, in connection with the sale of e-Certificates to the public.

50. Bauer's fraudulent and deceptive acts are outlined above, and, include, but are not limited to, selling void, fraudulently created, and/or unlawfully obtained e-Certificates.

51. As a direct and proximate cause of these past and continuing acts of fraudulent and deceptive practices, Northwest has suffered damages in the form of lost revenue in an amount exceeding $75,000.

## COUNT TWO

### DECEIT
### (N.D.C.C. § 9-10-03)

52. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

53. North Dakota Century Code Section 9-10-03 provides that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers."

54. By offering to sell and by selling e-Certificates, Bauer is suggesting that the e-Certificates were lawfully obtained and are valid and redeemable to Northwest for travel discounts. This constitutes deceit under North Dakota Century Code § 9-10-02.

55.     As a result of Bauer's deceit, Northwest altered its position by accepting void and fraudulently obtained e-Certificates and granted discounts to passengers who should not have received discounts.

56.     As a direct and proximate cause of these past and continuing acts of deceit, Northwest has suffered damages in the form of lost revenue in an amount exceeding $75,000.

## COUNT THREE

## CONVERSION

57.     Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

58.     E-Certificates, both in their physical document form and in their design, layout, and numbering system, constitute personal property belonging to Northwest.

59.     By fraudulently creating, buying and/or unlawfully obtaining e-Certificates, Bauer has and continues to tortuously detain and wrongfully exercise dominion or control over Northwest's personal property in defiance of Northwest's rights.

60.     As a direct and proximate cause of these past and continuing acts of conversion, Northwest has suffered damages in the form of lost revenue in an amount exceeding $75,000.

## COUNT FOUR

## UNLAWFUL INTERFERENCE WITH BUSINESS

61.     Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

62.     Northwest has valid business expectancies with passengers who purchase e-Certificates from Bauer.

63.     Bauer knows or has reason to know of these business expectancies.

64. Bauer committed independently tortuous or otherwise unlawful acts of interference with Northwest's business expectancy. These acts are outlined above, and, include, but are not limited to wrongfully buying, acquiring or creating e-Certificates and transferring e-Certificates for money or other consideration.

65. As a direct and proximate cause of these past and continuing acts of unlawful business interference, Northwest has suffered actual damages in the form of lost revenue in an amount exceeding $75,000.

## COUNT FIVE

### CLAIM AND DELIVERY
### (N.D.C.C. § 32-07-01)

66. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

67. Bauer has e-Certificates in either a physical form, an electronic form, or both, which are Northwest's personal property.

68. Northwest demands immediate delivery of all forms of Northwest e-Certificates in Bauer's possession.

## COUNT SIX

### VIOLATION OF UNFAIR TRADE PRACTICES ACT
### (N.D.C.C. § 51-10-03)

69. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

70. The Unfair Trade Practices Act, North Dakota Century Code Section 51-10-03, prohibits "[a]ny advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than cost … with the intent, or with the effect of … injuring a competitor, impairs and prevents fair competition, injures public welfare, and is unfair competition and

contrary to public policy and the policy of this chapter, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or substantially to lessen competition, or unreasonably to restrain trade, or to tend to create a monopoly in any line of commerce."

71. Bauer is advertising, offering to sell and selling e-Certificates at less than cost.

72. Bauer's fraudulent scheme has the intent and the effect of injuring Northwest, impairs and prevents fair competition, injures public welfare, and is unfair competition and contrary to public policy.

73. Bauer's acts of advertising, offering to sell, and selling e-Certificates has the effect of deceiving purchasers or prospective purchasers, and it substantially lessens competition.

74. As a direct and proximate cause of these past and continuing acts of unfair trade practices, Northwest has been damaged financially and demands Bauer be enjoined from continuing his fraudulent scheme and that Bauer be compelled to disgorge the profits of his illegal scheme.

## COUNT SEVEN

### INFRINGEMENT OF REGISTERED TRADEMARKS
### (15 U.S.C. § 1114)

75. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

76. Bauer's domain name www.northwestdiscountcoupons.com is confusingly similar to the NORTHWEST Marks, and is used in a similar manner in connection with similar goods and services, constituting trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

77. Northwest is entitled to monetary damages and injunctive relief prohibiting Bauer from using the Domain Name www.northwestdiscountcoupons.com and any other trade name, trademark, service mark or Domain Name that is likely to be confused with the NORTHWEST Marks. Without injunctive relief, Northwest has no means by which to control the continuing injury to its reputation and goodwill or of the continuing dilution of the NORTHWEST Marks. Northwest has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Northwest if it loses the ability to control the use of the NORTHWEST Marks, or suffer damage to its reputation and associated goodwill through the false and unauthorized use of the NORTHWEST Marks.

78. Because Bauer's actions have been committed willfully, maliciously and intentionally, this is an exceptional case and Northwest is entitled to recover Bauer's profits together with Northwest's damages, trebled, costs of the action, and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT EIGHT

### UNFAIR COMPETITION UNDER FEDERAL LAW
### (15 U.S.C. § 1125(a))

79. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

80. On information and belief, Bauer's Domain Name was deliberately chosen to be confusingly similar to the NORTHWEST Marks, and, as such, its use in commerce constitutes a willful and deliberate false designation of origin and false deception, as well as unfair competition with Northwest and an attempt to palm off or permit others to palm off Bauer's goods or services as those of Northwest's goods or services.

81. Bauer's use of the trade name www.northwestdiscountcoupons.com is likely to cause confusion, mistake, and deception in the public, and to lead consumers to the erroneous impression that Bauer or his products and services originate with, or are endorsed or sponsored by, or affiliated with Northwest, or that there is some association between Northwest, and its products and services, and Bauer and his products and services.

82. Bauer's conduct constitutes trademark infringement and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

83. The above acts by Bauer have caused, are causing, and unless enjoined will likely continue to cause, irreparable harm and injury to Northwest's business, reputation, and goodwill. Such acts are and have been willful and malicious, carried out with full knowledge that such acts are in violation of the law and will irreparably harm Northwest.

84. Northwest is entitled to monetary damages and injunctive relief prohibiting Bauer from using the Domain Name or any other trade name, trademark, or domain name that is likely to be confused with any of the NORTHWEST Marks, or otherwise unfairly competing with Northwest. Without preliminary and permanent injunctive relief, Northwest has no means by which to control the continuing injury to its reputation and goodwill. Northwest has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Northwest if it loses the ability to control the use of the NORTHWEST Marks, or suffer damage to its reputation and associated goodwill through the false and unauthorized use of the NORTHWEST Marks.

85. Because Bauer's actions have been committed willfully, maliciously and intentionally, this is an exceptional case and Northwest is entitled to recover Bauer's profits together with Northwest's damages, trebled, costs of the action, and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT NINE

### TRADEMARK DILUTION UNDER FEDERAL LAW
### (15 U.S.C. § 1125(c))

86. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

87. The NORTHWEST Marks are famous within the meaning of 15 U.S.C. §1125(c) and became famous before the acts of Bauer alleged herein.

88. The above acts by Bauer, which began after the NORTHWEST Marks became famous, are likely to dilute and tarnish the distinctive quality and the value of the NORTHWEST Marks.

89. Northwest is entitled to monetary damages and injunctive relief prohibiting Bauer from using the Domain Name, or any other trade name, trademark, or domain name that is likely to be confused with the NORTHWEST Marks, or otherwise unfairly competing with Northwest. Without preliminary and permanent injunctive relief, Northwest has no means by which to control the continuing injury to its reputation and goodwill or of the continuing dilution and tarnishment of the NORTHWEST Marks. Northwest has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Northwest if it loses the ability to control the use of the NORTHWEST Marks, or suffer damage to their reputation and associated goodwill through the false and unauthorized use of the NORTHWEST Marks.

90. Because Bauer's actions have been committed willfully, maliciously and intentionally, this is an exceptional case and Northwest is entitled to recover Bauer's profits together with Northwest's damages, trebled, costs of the action, and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT TEN

## CYBERSQUATTING UNDER FEDERAL LAW
## (15 U.S.C. 1125(d))

91. Northwest incorporates by reference the allegations in the preceding paragraphs as if set forth in full herein.

92. Northwest is the owner of the famous NORTHWEST Marks, and the owner of incontestable trademark registrations for marks comprised in whole or in dominant part of the word NORTHWEST, and used with air transportation services.

93. The NORTHWEST Marks, are distinctive and have indelibly become associated with the Northwest as a result of extensive advertising, promotion, use, and sale and offering of services under the NORTHWEST Marks, and their widespread recognition by the consuming public.

94. Bauer is the registered owner and the user of the Domain Name www.northwestdiscountcoupons.com, which is confusingly similar to the NORTHWEST Marks.

95. Bauer's registration and use of www.northwestdiscountcoupons.com occurred after the NORTHWEST Marks became famous.

96. Bauer registered the www.northwestdiscountcoupons.com with bad faith intent to profit from it, in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

97. Northwest is entitled to monetary damages and injunctive relief prohibiting Bauer from using the www.discountcoupons.com, or any other trade name, trademark, or domain name that is likely to be confused with the NORTHWEST Marks, or otherwise unfairly competing with Northwest. Without preliminary and permanent injunctive relief, Northwest has no means by which to control the continuing injury to its reputation and goodwill or of the continuing

dilution and tarnishment of the NORTHWEST Marks. Northwest has been and will continue to be irreparably harmed. No amount of money damages can adequately compensate Northwest if it loses the ability to control the use of the NORTHWEST Marks or suffer damage to its reputation and associated goodwill through the false and unauthorized use of the NORTHWEST Marks. Northwest is entitled to injunctive relief prohibiting Bauer from using the www.northwestdiscountcoupons.com and requiring Bauer to transfer the www.northwestdiscountcoupons.com to Northwest. Because Bauer's actions have been committed willfully, maliciously and intentionally, this is an exceptional case and Northwest is entitled to recover Bauer's profits together with Northwest's damages, trebled, costs of the action, and reasonable attorneys' fees pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

WHEREFORE, Northwest prays for judgment against Bauer as follows:

1. That Bauer be ordered to pay Northwest its actual damages suffered as a result of Bauer's wrongful acts in violation of North Dakota law, in an amount to be determined at trial;

2. That Bauer, his officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert and privity with them be permanently enjoined and restrained from directly or indirectly creating, purchasing, unlawfully accepting, and selling Northwest's e-Certificates;

3. That Bauer's profits from his unlawful sale of Northwest's e-Certificates be disgorged;

4. That Bauer, his officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert and privity with them, be permanently enjoined and restrained from directly or indirectly: operating a website with the domain name www.northwestdiscountcoupons.com and/or any other website with a domain

name which is likely to cause consumer confusion, mistake or deception with respect to Northwest's NORTHWEST mark;

5. That Bauer, his officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert and privity with them, be permanently enjoined and restrained from directly or indirectly making any use of Northwest's NORTHWEST mark and/or any terms confusingly similar thereto which is likely to confuse consumers into believing that the services that are sponsored by, affiliated with, or otherwise endorsed in any way by Northwest;

6. That Bauer, his officers, affiliate companies, agents, servants, employees, successors, licensees, and assigns, and all others in concert and privity with them, be enjoined during the pendency of this action, and permanently thereafter, from committing any other acts calculated to cause purchasers to believe that any of its or their services are sponsored by, approved by, connected with, or offered or sold by Northwest or under license from Northwest;

7. That Bauer, within thirty (30) days after having been served with judgment, with notice of entry upon it, be required to file with this Court and to serve upon Northwest, a written report, under oath, setting forth in detail, the manner in which Bauer has complied with Paragraphs 4 through 6, above;

8. That Bauer be ordered to account to Northwest for, and to pay to Northwest, all of Bauer's profits and all amounts by which Bauer has been unjustly enriched from its acts and practices complained of herein, increased on grounds that this is an exceptional case and according to the circumstances of the case under Section 35(a) of the Lanham Act;

9. That Bauer be ordered to pay Northwest its actual damages suffered as a result of Bauer's wrongful acts in an amount to be determined at trial, trebled on grounds that this is an exceptional case under Section 35(a) of the Lanham Act;

10. That Bauer be ordered to pay Northwest's attorneys' fees and costs on grounds that this is an exceptional case under Section 35(a) of the Lanham Act;

11. That Bauer be ordered to pay Northwest prejudgment interest on any monetary award;

12. That Bauer be ordered to deliver to Northwest all Northwest e-Certificates in Bauer's possession, whether they be in electronic, paper, or any other form; and

13. Such further relief as the Court deems just and proper.

Dated: December 14, 2006.

/s/ John C. Kapsner (#03094)
VOGEL LAW FIRM
200 North 3rd Street, Suite 201
P. O. Box 2097
Bismarck, ND 58502-2097
(701) 258-7899

Jeffrey A. Eyres (No. 228527)
Rita A. O'Keeffe   (No. 0306873)
Jeffrey A. Ehrich (No. 0345921)
LEONARD, STREET AND DEINARD
   Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota 55402
Telephone:  (612) 335-1938

**ATTORNEYS FOR PLAINTIFF
NORTHWEST AIRLINES, INC.**