**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Northwest Airlines, Inc., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Michael Bauer )<br>)<br>Defendant. ) | **ORDER GRANTING EX PARTE<br>TEMPORARY RESTRAINING ORDER**<br><br>Case No. 1:06-cv-086 |

Before the Court is the plaintiff's, Northwest Airlines, Inc. ("Northwest") "Motion for Temporary Restraining Order" filed on December 14, 2006. Northwest seeks a temporary restraining order and a preliminary injunction enjoining defendant Michael Bauer ("Bauer") from directly or indirectly creating, purchasing, unlawfully accepting, and selling Northwest's e-Certificates; directly or indirectly operating a website with the domain name www.northwestdiscountcoupons.com and/or any domain name confusingly similar thereto, which is likely to confuse consumers into believing that Bauer's services are sponsored by, affiliated with, or otherwise endorsed in any way by Northwest; directly or indirectly making any use of Northwest's NORTHWEST mark and/or any terms confusingly similar thereto, which is likely to confuse consumers into believing that Bauer's services are sponsored by, affiliated with or otherwise endorsed in any way by Northwest; requiring that Bauer deliver to Northwest all Northwest e-Certificates in Bauer's possession, whether they be in electronic, paper, or any other form. For the reasons set forth below, Northwest's motion is granted.

1

**I.     BACKGROUND**

This dispute arises from alleged unlawful trade practices, deceit, conversion, interference with business arising under the laws of North Dakota, trademark infringement, dilution, deceptive trade practices, unfair competition, cyber squatting, and other relief arising under the trademark laws of the United States of America, specifically 15 U.S.C. § 1051 et seq. (the "Lanham Act"). Northwest asserts that Bauer is operating a scheme to defraud Northwest by selling illegally obtained Northwest discount travel certificates at a website with the domain name www.northwestdiscourntcoupons.com. Northwest contends that Bauer is defrauding Northwest and infringing and diluting its famous trademark thereby causing irreparable injury to Northwest. Northwest is requesting a temporary restraining order to stop Bauer's allegedly illegal business and what Northwest claims is the incalculable and irreparable injury to its reputation and goodwill embodied in Northwest's trademarks.

Northwest was established as Northwest Airways in 1926 to carry mail between Minneapolis/St. Paul, Minnesota and Chicago, Illinois. It began passenger service in 1927. Today Northwest is the world's fifth largest airline with over 31,000 employees. Since 1926, Northwest has continuously and extensively engaged in the business of promoting, offering, and distributing air transportation services in commerce under a family of marks that incorporate the word Northwest (referred individually and collectively as the "NORTHWEST mark")

During the many years Northwest has been continuously using the NORTHWEST mark in connection with its services, it has sold billions of dollars of services under the NORTHWEST mark. Northwest has expended many millions of dollars in advertising its services offered under the NORTHWEST mark in a variety of media. Northwest advertises on television; a wide variety of

general circulation and specialized print media; billboards; trade shows; and the Internet. Many thousands of article and stories relating to the services offered by Northwest have been published via newspapers and magazines, radio, television and the Internet.

Through continuous, extensive, and exclusive use and promotion by Northwest, the NORTHWEST mark had garnered substantial name and design recognition and goodwill among consumers generally, and specifically consumers of air transportation services. The public distinguishes Northwest's services from those of others on the basis of the NORTHWEST mark. Northwest is the owner of numerous federal trademarks registered on the Principal Register for various services in the airline and travel industry, including the following: (1) Northwest Airlines (Reg. No. 1718838); (2) Northwest Airlines Every Day Deals (Reg. No. 2250398); (3) Northwest Airlines WorldVacations (Reg. No. 2425286); (4) NW Northwest Airlines Voicelink (Reg. No. 2462142); (5) Northwest Airlines Voicelink (Reg. No. 2480325); (6) Northwest Airlines Worldperks Mall (Reg. No. 2646848); and (7) Northwest Airlines Worldgateway (Reg. No. 2744100). Northwest is also the owner of the domain name www.NORTHWESTAIRLINES.com. Northwest directs traffic from the site with that domain name to its www.NWA.com website where it promotes and offers for sale its good and services under the NORTHWEST mark. Northwest offers discount fares and incentives on its website as well as via e-mails to customers who sign-up to receive such e-mails.

Northwest distributes discount travel coupons called "e-Certificates" as a service recovery tool and goodwill gesture to passengers who experience flight delays, cancellations, or other inconveniences. Northwest maintains e-Certificates in their paper form at airport ticket and gate counters. Northwest customer service agents distribute the e-Certificates, as needed, to passengers

affected by a flight irregularity. Typically, agents issue only one e-Certificate per passenger. E-Certificates are redeemable for significant discounts on future ticket purchases. For example, e-Certificates issued before November 2006 allow passengers to receive a $100 discount toward the subsequent purchase of a roundtrip ticket worth $400 or more. Passengers redeem e-Certificates by visiting Northwest's website and entering the unique coupon number that appears on the face of each e-Certificate.

Pursuant to the terms and conditions of the e-Certificates issued before November 2006, passengers may gift an e-Certificate to another individual, but they may not sell them. Such free transfers are permitted on the premise that the passengers may wish to use e-Certificates as a "thank-you" gesture toward a family member or friend also affected by a flight irregularity. Passengers may not sell e-Certificates. The terms and conditions of the e-Certificates prominently displayed in two places on the e-Certificates clearly states:

> This E-Cert is transferable but not for cash or any other consideration. Purchased/auctioned E-Certs are subject to confiscation and travel will not be permitted.

See Docket No. 5-2 (Exhibit A).

In response to the actions of Bauer and others, Northwest has instituted a new e-Certificate format. Under the new format, e-Certificates are reduced in value and are subject to tighter tracking and control. However, the e-Certificates issued prior to November 2006 do not expire until October 31, 2007, and Northwest asserts there are thousands of these e-Certificates in circulation. Also beginning in November 2006, e-Certificates are not transferrable under any circumstances, and only the passenger issued the e-Certificate may use it.

Northwest asserts that Bauer operates the website, www.northwestdiscountcoupons.com. According to Northwest, Bauer uses this website to advertise and sell Northwest's e-Certificates for money. Bauer's website says, in relevant part:

> Northwest Airlines offers discount travel coupons that can be used when booking your flight online or over the phone with Northwest. Coupons are electronic so you will not need the coupon at any point in time. Because these coupons are electronic we can QUICKLY get the coupon codes to you via email so you can book your flight.

See Docket No. 6-2 (Exhibit A). Bauer's website promises that "[t]his coupon is completely transferable as it has no name or worldperks number on it, as opposed to a voucher or gift certificate. This is just a coupon!!" Id. Northwest argues that Bauer's sale of the e-Certificates, which are not transferable for cash, is a fraud on Northwest and on the passengers who purchase them believing they are legitimate. Northwest also asserts that is it probable that Bauer is selling e-Certificates on other Internet sites as well.

In April 2006, Northwest became aware that there were numerous auctions for Northwest e-Certificates on Internet auction sites such as e-Bay and Craig's List. Northwest Senior Revenue Integrity Analyst, Deborah Heydal, began tracking these Internet auction sites to determine the extent of the e-Certificate abuse. She subsequently learned of Bauer's website. Under Heydal's supervision, a Northwest intern, posing as a member of a large group seeking to acquire multiple e-Certificates, contacted Bauer via the website. Bauer identified himself as Mike Bauer and indicated that he was able to supply e-Certificates to the group. Because e-Certificates are distributed to individual passengers for a discrete delay, cancellation, or inconvenience, Northwest asserts it is nearly impossible that Bauer's supply of e-Certificates was legitimately obtained.

Finally, to confirm that Bauer sells e-Certificates, Heydel purchased seven e-Certificates for $84.00 from him via the website. See Docket Nos. 5-5 & 5-6 (Exhibits D &E).

Northwest estimates that e-Certificate abuse from Internet websites such as Bauer's is costing Northwest over $1.2 million per year. Northwest asserts that Bauer and his website have caused a portion of these losses.

Northwest asserts that two independent causes of action entitle Northwest to injunctive relief. First, Bauer's misleading use of the NORTHWEST mark violated the Lanham Act and causes continual and irreparable damages to value and trust Northwest has cultivated in its name and mark. Second, Bauer's alleged illegal and fraudulent sale of e-Certificates to unknown and unsuspecting customers is a violation of public trust that cannot be permitted to continue under North Dakota law.

## II.    LEGAL DISCUSSION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a temporary restraining order should be issued, the Court must look to the specific facts shown by affidavit(s) to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In determining whether a temporary restraining order or preliminary injunctive relief should issue, the Court is required to consider the factors set forth in Dataphase Systems, Inc., v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest.

Dataphase Systems, Inc. v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." City of Timberlake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 556 (8th Cir. 1993) *cert. denied* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed. 2d 861 (1994).

Pottgen v. Missouri State High School Activities Association, 40 F.3d 926, 929 (8th Cir. 1994).

The burden of establishing the necessity of a temporary restraining order is on the movant. Baker v. Electric Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer System, Inc. v. Modern Banking System, Inc., 871 F.2d 734, 737 (8th Cir. 1989) (*en banc*). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Electric Co-op, 28 F.3d 1472 (quoting Calvin Klein Cosmetics Corporation v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

### A.    PROBABILITY OF SUCCESS ON THE MERITS

Northwest contends that it is likely to succeed on both its claims under the Lanham Act and fraud claims.[1] Trademark infringement claims include the prerequisite that the defendant "use in commerce" the protected mark or a colorable imitation thereof. See Daimler Chrysler v. Bloom, 315 F.3d 932, 936 (8th Cir. 2003) (citing Holiday Inns, Inc. v. 800 Reservation, Inc., 86 F.3d 619, 626 (6th Cir. 1996)("[T]he defendants' use of a protected mark is a prerequisite to the finding of a Lanham Act violation."). Once this preliminary hurdle is cleared, in order to prevail on a trademark

---

[1] The complaint sets forth ten counts: (1) violation unlawful sales or advertising practices act (N.D.C.C. § 51-15-02); (2) deceit (N.D.C.C. § 9-10-03); (3) conversion; (4) unlawful interference with business; (5) claim and delivery (N.D.C.C. § 32-07-01); (6) violation of unfair trade practices act (N.D.C.C. § 51-10-03); (7) infringement of registered trademarks (15 U.S.C. § 1114); (8) unfair competition under federal law (15 U.S.C. § 1125(a)); (9) trademark dilution under federal law (15 U.S.C. § 1125(c)); and (10) cybersquatting under federal law (15 U.S.C. § 1125(d)).

infringement claim, a plaintiff must prove a likelihood of consumer confusion, which is the "hallmark of any trademark infringement claim." Minnesota Mining & Manufacturing Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir. 1997) (citing Polymer Technology Corp. v. Mimran, 37 F.3d 74, 80 (2d Cir. 1994)).  In determining whether a likelihood of confusion exists, a court should take the following factors into consideration:  (1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to pass off its good as those of the trademark owner; (5) incidents of actual confusion; and (6) whether the degree of purchaser care can eliminate any likelihood of confusion which would otherwise exist. Minnesota Mining & Manufacturing Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir. 1997).  No single factor is dispositive.  Squirtco v. Seven-Up Co., 628 F.2d 1086 (8th Cir 1980).

Northwest asserts that its NORTHWEST mark is a valid protectable trademark.  15 U.S.C. § 1115 provided in part that:

> Any registration . . . or . . . mark registered on the principal register . . . and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce . . .

15 U.S.C. § 1115.  Northwest has provided copies of its federally registered trademarks. See Docket Nos. 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, & 1-9 (Exhibits B, C, D, E, F, G, & H).  Northwest has also submitted a copy of Bauer's website, www.northwestdiscountcoupons.com, which establishes that Bauer is using Northwest's protected mark.  The Court finds that at this preliminary stage of the litigation, and based on the information in the record, Northwest has established that it has a valid

8

protectable trademark and that Bauer is using Northwest's protected mark in commerce. As a result, the Court finds that Northwest has satisfied the prerequisite to a trademark infringement claim

Northwest must establish a likelihood of success on its trademark infringement claim which necessitates a showing of consumer confusion, which is the hallmark of any trademark infringement claim. Northwest asserts that Bauer has created a likelihood of confusion, deception or mistake among an appreciable number of Internet consumers as to the source of or association between Bauer and Northwest by operating a website with the domain name www.northwestdiscountcoupons.com. Northwest relies on two cases which held that registering domain names that are identical or confusingly similar to a distinctive mark is sufficient to establish a probability of success on the merits of a Lanham Act claim for purposes of issuing a temporary restraining order or preliminary injunction. See Green Products Co. v. Independence Corn By-Products Co., 992 F. Supp. 1070, 1076-77 (8th Cir. 1997); Faegre & Benson, LLP, v. Purdy, No. Civ. 03-6472 (MJD/JGL), 2004 WL 167570 (Jan. 5, 2004, D. Minn).

Northwest also discusses each of the factors to be considered in determining whether a likelihood of confusion exists and concludes all of the factors favor a finding of trademark infringement. The Court agrees. The Court finds that Northwest's use of its mark in association with air transportation for over 80 years favors a finding that the NORTHWEST mark is a strong mark. As discussed above, the Court finds that there is substantial similarity between the NORTHWEST mark and Bauer's use of an essentially similar mark or a dominant portion of the mark. The Court further finds that Bauer's sale of unauthorized e-Certificates or coupons competes with the legitimate discount and incentive programs offered by Northwest. The Court also finds that Bauer's use of the word "Northwest" coupled with the fact it appears the products he is selling (e-

Certificates) are only valid in relation to flights on Northwest Airlines, tends to establish that Bauer intends to draw customers who are interested in Northwest Airlines. As Northwest asserts, Bauer appears to be selling an unauthorized discount for Northwest services. The Court finds it is likely Bauer's actions have created actual confusion. Finally, the Court finds the nature of the Internet makes if unlikely that consumers can avoid confusion through the exercise of due care. See Coca-Cola Co. v. Purdy, No. 02-1782 ADM/JGL, 2005 WL 212797 (Jan. 28, 2005, D. Minn).

The Court finds that at this preliminary stage of the litigation, and based on the information in the record, Northwest has established a sufficient likelihood of success on the merits of its trademark infringement claim. The Court finds it is unnecessary to undertake an extensive review of Northwest's additional claims. However, a cursory review of the additional claims leads the Court to preliminarily conclude that Northwest would likely be successful on the merits of many of those claims as well. Accordingly, the Court finds that this factor weighs in favor of the issuance of a temporary restraining order.

### B. IRREPARABLE HARM

As Northwest asserts, irreparable harm is presumed where a plaintiff shows a likelihood of confusion. See General Kills v. Kellogg, Co., 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [the plaintiff] can demonstrate a likelihood of consumer confusion.")

The Court finds that at this preliminary state of the litigation, Northwest has established that it would likely suffer irreparable harm if a temporary restraining order was not issued. Therefore, this factor weighs in favor of the request for a temporary restraining order.

### C. BALANCE OF HARM

Northwest asserts that the balance of harm weighs in Northwest's favor because protecting its valuable intellectual property outweighs any financial loss that Bauer will incur by complying with trademark law.  Northwest asserts that it has made a substantial investment in developing its trademark over 80 years and that its harm outweighs that of Bauer's.

The Court finds that the irreparable harm that Northwest has and will arguably continue to suffer, outweighs any potential harm that Bauer may suffer from the issuance of a temporary restraining order. The Court finds that this factor weighs in favor of the issuance of a temporary restraining order.

### D. PUBLIC INTEREST

The public interest weighs in favor of protecting intellectual property and protecting consumers from fraud in all forums including the Internet.  <u>Green Products Co. v. Independence Corn By-Products Co.</u>, 992 F. Supp. 1070, 1076-77 (8th Cir. 1997).  Therefore, at this preliminary stage, the Court finds this factor weighs in favor of the issuance of a temporary restraining order.

### III. CONCLUSION

After carefully reviewing the entire record, the Court finds that Northwest has met its burden of establishing the necessity of a temporary restraining order.  The Court grants the Plaintiff's Motion for a Temporary Restraining Order (Docket No. 3) and will reserve ruling on the request for a preliminary injunction until after the show cause hearing.

**IT IS ORDERED** that Michael Bauer his agents, successors, assignees, principals, employees, attorneys, and representatives are temporarily enjoined from engaging in, committing, or performing directly and indirectly, any and all of the following acts:

A) directly or indirectly creating, purchasing, unlawfully accepting, and selling Northwest's e-Certificates; directly or indirectly operating a website with the domain name [www.northwestdiscountcoupons.com](www.northwestdiscountcoupons.com) and/or any domain name confusingly similar thereto, which is likely to confuse consumers and lead them into believing that Bauer's services are sponsored by, affiliated with, or otherwise endorsed in any manner by Northwest Airlines;

B) directly or indirectly making any use of Northwest's NORTHWEST mark and/or any terms confusingly similar thereto, which is likely to confuse consumers and lead them into believing that Bauer's services are sponsored by, affiliated with or otherwise endorsed in any way by Northwest Airlines; and

C) requiring that Bauer deliver to Northwest Airlines all Northwest e-Certificates in Bauer's possession, whether they be in electronic, paper, or any other form.

**IT IS ORDERED** that the Defendant shall appear in Courtroom One of the U.S. District Court for the District of North Dakota on Tuesday, January 2, 2007, at 1:30 p.m. to show cause under Rule 65 of the Federal Rules of Civil Procedure why he, his agents, successors, assignees, principals, employees, attorneys, and representatives should not be preliminarily enjoined during the pendency of this action, from engaging in the above-mentioned acts.

**IT IS FURTHER ORDERED** that Bauer shall preserve all materials, including those in electronic format, which are relevant to this matter pursuant to Rule 26 of the Federal Rules of Civil Procedure and E*Trade Securities LLC, v. Deutche Bank AG, 230 F.R.D. 582 (D. Minn. 2005).

**IT IS FURTHER ORDERED** that the requirement for security under Rule 65(c) is waived. Pursuant to Local Rule 65.2, the Court directs the United States Marshal Service to serve the Defendant with certified copies of this order along with copies of the supporting pleadings and affidavits.

Dated this 15th day of December, 2006.

/s/  Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court